Irving BROMBERG and Jeanette Bromberg, Appellants,

v.

George W. INGLING, Commissioner of Revenue and Taxation, Government of Guam, Appellee.

No. 16520.

United States Court of Appeals Ninth Circuit.

Feb. 23, 1962.

Spiegel, Turner, Barrett & Ferenz, Walter S. Ferenz, Agana, Guam, Lyle H. Turner, San Francisco, Cal., Samuel Reisman, Los Angeles, Cal., for appellant.

Louis A. Otto, Jr., Atty. Gen. of Guam, Harold W. Burnett, Deputy Atty. Gen., Leon D. Flores, Island Atty., John H. Pigg, Deputy Island Atty. of Guam, Agana, Guam, for appellee.

Before CHAMBERS and KOELSCH, Circuit Judges, and BOWEN, District Judge.

1. 64 Stat. 392, 48 U.S.C.A. § 1421i.

2. Section 19,700, approved March 14, 1958, of the Government Code of Guam, reads as follows:

CHAMBERS, Circuit Judge.

The 1950 Organic Act of Guam [1] (in Section 31) made federal income taxes applicable in the Territory of Guam with the following words:

> "The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam."

The preceding Section 30 provided that "All * * * Federal income taxes derived from Guam * * * shall be covered into the treasury of Guam * * * and shall be expended for the benefit and government of Guam * * *." 48 U.S.C.A. § 1421h.

Experience developed that the foregoing broad language had been too casual and left holes in the coat as it was fitted to Guam. These were fairly well patched in August, 1958, by Public Law 85–688, 72 Stat. 681, 48 U.S C.A. § 1421i, which relates solely to Guam's income tax.

Accepting the validity of Dudley v. Commissioner, 28 T.C. 992, aff'd. 3 Cir., 258 F.2d 182, and Jones v. Commissioner, Docket No. 71,931, a 1958 tax court case involving a Guam taxpayer, there has been and is yet no way one charged with income tax due to the government of Guam can get the normal tax court review of one's liability, something so all-important to him who cannot pay at all or without serious precipitate liquidation of assets. Of course, the traditional "pay and sue for it back" has been and continues to be available in the District Court of Guam.

But the Guam legislature, by its Public Law 75, in March, 1958, did provide comparable relief to that available to a federal taxpayer in a state by adopting Section 19,700 [2] which authorizes the Dis-

"District Court Jurisdiction. In addition to such other jurisdiction as the District Court of Guam has with respect to the Income Tax provided by Section 31 of the Organic Act of Guam and pur-

trict Court of Guam to give the same type of review without payment of administratively-determined deficiencies as is afforded in the United States tax court. No one has suggested that the lack of tax court review deprived the Territory of Guam of the federal income tax law.

The Brombergs are residents of Los Angeles but are subject to Guam income taxes by reason of a partnership apparently with a business situs in Guam. For the tax years 1952, 1953 and 1954, the appellee late in 1957 and early in 1958 challenged taxpayers' allowances to themselves for depreciation of property which may be assumed to be located on the Island of Guam. As of January 20, 1958, the appellee, in his recasting of depreciation allowable, claimed that a total of $7,048.98 was due by the Brombergs for the three years under review.

In the District Court of Guam, on June 24, 1958, the Brombergs filed an action to enjoin Ingling, as Guam commissioner, from collecting the taxes he previously purported to assess. On motion, the Brombergs' complaint and action were dismissed. This appeal followed.

██ The United States Commissioner of Internal Revenue, when he audits returns, gets the informalities of review over, and when he thinks he should have more tax, sends out first a 30-day letter and then later a 90-day letter.[3] The 30-day letter, in capsule, informs the taxpayer what the issue is and its amount. It invites the taxpayer to come in and see the commissioner and "argue" with him if he wants to do so. But the taxpayer is not required to come. And the 30-day letter is not required by statute.

██ ██ The 90-day letter is a notice of the commissioner's determination, and according to the statutory scheme, absent jeopardy, must precede assessment.[4] Within 90 days after the mailing of the notice, the taxpayer may petition the tax court for review. The commissioner is not supposed to assess the deficiency until the 90 days have elapsed without a petition being filed in the tax court, or, if review is sought, until the tax court decision has become final. Taxpayer has never sought a review anywhere of the assessment made by Ingling.

██ The prime question is: Was the assessment made simultaneously with the announcement of the deficiency valid? That is, when on January 20, 1958, Brombergs had no right anywhere to a review without payment of the tax, were they entitled to the same 90-day (or 150-day)[5]

suant to the United States Internal Revenue Code of 1939, as amended, and the United States Internal Revenue Code of 1954, as amended, and any future amendments thereto, the District Court of Guam shall also have the same jurisdiction with regard to the said Income Tax as the Tax Court of the United States has with respect to the United States Income Tax. The taxpayer may file a petition with the District Court of Guam for a redetermination of a deficiency within ninety (90) days after the notice of deficiency is mailed, or one hundred and fifty (150) days if the notice is mailed to a person outside the territory of Guam, not counting Saturday, Sunday, or a legal holiday in Guam as the last day. The District Court of Guam shall implement this Chapter, as may be necessary, by rules of procedure."
We do not reach here the question of validity of Section 19,700. Such a question is involved in Jones v. Ingling, No. 17,341, not yet argued in this court.

3. See § 6212 and § 6213 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 6212, 6213.
   Note: There is no indication that as here pertinent the 1954 Code made any changes in prior law which should affect this decision.

4. Section 6213 of 1954 Code.

5. Throughout the opinion, we just refer to 90 days, deeming that adequate because there was neither a 90-day or a 150-day delay from notice of deficiency to assessment. However, § 6213 of the 1954 Code says "[w]ithin 90 days, or 150 days if the notice is [mailed] to a person outside the States of the Union [or] the District of Columbia * * *."
   Section 19,700 adopted in Guam in March, 1958, said: "* * * within 90 days after the notice of deficiency is mailed, or one hundred and fifty days if the notice is mailed to a person outside the Territory of Guam * * *."

notice before assessment as if they had a right to a tax court or tax court type of review? Our answer is: Yes.

■ ■ Perhaps the vernacular expression that the 90-day letter is "the ticket to the tax court" led the commissioner into error. Undoubtedly that phrase has been used in opinions of more than one court. But we cannot say the letter has no other purpose. When in the early days income taxes were light at worst, there was not too much reason to give a taxpayer a lot of time. But under the heavy burden of taxes today, the Congress, we would assume, may have in mind time for taxpayers to make their arrangements to pay as well as to petition the tax court. Further, we think, under the original Section 31 of the Organic Act, Guam was obliged to give, so far as it could, the same rights to dally to one paying taxes in Guam as one has on the mainland. When he read the 90-day minimum prerequisite before assessment out of the statute, he construed the law in favor of himself. The taxpayer is entitled to the doubt. Appellee reports that an adverse decision may seriously threaten the revenue of Guam. The choice of skipping the 90-day period from notice of determination to assessment was not ours. All that was required to avoid the entanglement now so evident was that the Internal Revenue Code of the United States be followed as nearly as it could be. Guam couldn't give a tax court review, but it has since found a way to give the equivalent. And it could have given the notice before assessment.

It may be said that the commissioner actually was decent to the taxpayers. He did give taxpayers on October 18, 1957, notice of what he proposed to claim—the 30-day letter. He waited over 90 days before giving the simultaneous notice of deficiency and assessment— and, even then, he gave the Brombergs 30 days to pay. But whether Ingling was actually nice about it is not the question. His successor might not have been. If we read the 90-day requirement out for a taxpayer liable to Guam, then Ingling had a right under the statute to virtually proceed against any decent taxpayer almost as he would on a jeopardy assessment against the unreliable or the precarious. His good intentions and the fact that in a vacuum he did not proceed unreasonably cannot erase the fact that he did not follow the statute as far as he could have.

As we read appellee's brief, we think he believes that the adoption of Section 19,700 by the legislature on March 14, 1958, somehow helps him. He may not so contend. But surely if the commissioner had been following the 1954 Code as far as he could, and not making the assessment before or simultaneously with ascertaining the deficiency, the Brombergs would have been entitled, and moreover obligated, if they wanted any review of the determination before payment, to seek the redetermination in the District Court of Guam.

■ Appellee commissioner contends that either the 30-day letter of October 18, 1957, or the letter of January 20, 1958, qualifies as a 90-day letter. As to the first, we find no more than a statement of tentative position of the commissioner. As to the second, we would not hold that a 90-day letter—notice of deficiency—must say anything about 90 days. But when it purports to assess simultaneously with giving notice, we cannot approve it as a 90-day letter. We think the point is concluded by this court's earlier decision in Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, cert. den., 300 U.S. 672, 57 S. Ct. 610, 81 L.Ed. 878.

We are not holding that if the Brombergs had paid the claimed deficiency and sued for it back, they would have been entitled to get it simply because of the premature assessment. If such a case lurks in Guam, it will be time enough to decide it when it comes here. Although some language in the two Court of Claims cases of Lehigh Portland Cement Co. v. United States, 30 F.Supp. 217, and Lyddon & Co. v. United States, 158 F.Supp. 951, 141 F.Supp. 545, cert. den., 358 U.S.

832, 79 S.Ct. 55, 3 L.Ed.2d 70, may seem to run contrary to our Ventura case, it is possible that on other grounds those two cases are consistent with our Ventura case. In our judgment, we are not yet in conflict with the Court of Claims.

■ We have examined the August 20, 1958, amendments to Section 31 of the 1950 Guam Organic Act (72 Stat. 681). We cannot find that they should be construed to validate just any assessment made by Guam's commissioner.

■ Appellee contends that appellants by waiting from January 20, 1958, to June 24, 1958, to seek an injunction, if they ever had such a right, waited too long. He says that under § 6213(a) of the Internal Revenue Code of 1954, if appellants were entitled to an injunction at all, they had to seek it within 90 or 150 days after the determination of deficiency. We do not read § 6213(a) of the 1954 Code as appellee does. It provides, except in jeopardy cases, "no assessment of a deficiency * * * shall be made, begun, or prosecuted until * * the expiration of [the] 90-day period or 150-day period, as the case may be * *."

Appellee's contention would permit an injunction, if the commissioner's procedure was just a little bit illegal, say an assessment made a few days after notice of deficiency, but deny it if the time had not even started to run. We do not have a case here where the time had started to run or had run. So long as there be no laches or statute of limitations on the facts here, we perceive no reason for limitation to 90 or 150 days. See Maxwell v. Campbell, 5 Cir., 205 F.2d 461. And we think a literal reading of the statute (§ 6213(a)) favors taxpayers and not the commissioner on the question of a right to injunction. Following the commissioner's action here, the condition subsequent to cutting off taxpayers' time just didn't happen.

Any action proposed by the commissioner on these facts might well come within the recognized exceptions to § 7421(a) of the 1954 Code and not have to depend on the specific exception of § 6213(a). This we do not decide as we do not reach the question.

The judgment is reversed for proceedings consistent with the foregoing opinion.